UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICHAEL A. BURNHART, | ) |
| | ) |
| Plaintiff, | ) CASE NO. C06-361-JCC-MJB |
| | ) |
| v. | ) |
| | ) REPORT AND |
| BEN SANDERS, M.D., et al., | ) RECOMMENDATION |
| | ) |
| Defendants. | ) |
| _____ | ) |

## I. INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff, who is proceeding *pro se* in this action under 42 U.S.C. § 1983, is currently incarcerated at the King County Correctional Facility in Kent, Washington. In his amended complaint, Plaintiff alleges that the defendants violated his constitutional right against cruel and unusual punishment, and the "right to hearing for infractions that jeopardize custody levels." (Dkt. # 6 at 4.) He names the following as defendants: (1) Nurse P. A. Glen[n] [Lirman], and (2) Commander Reed Holtgeerts, Director of the Regional Justice Center.[1]

Now before the Court is Defendants' motion for summary judgment, seeking dismissal of Plaintiff's complaint with prejudice. (Dkt. # 20.) Plaintiff filed a response in opposition to the

---

[1]This Court dismissed Plaintiff's amended complaint against Dr. Ben Sanders pursuant to 28 U.S.C. § 1915(e) for failure to state a claim on which relief may be granted. *(See* Dkt. # 8.)

REPORT AND RECOMMENDATION
Page - 1

summary judgment motion (Dkt. # 23) and Defendants filed a reply (Dkt. # 27). Having considered the motion, the opposition thereto, and the balance of the record, the undersigned recommends that the motion for summary judgment be GRANTED and this action dismissed with prejudice.

## II. FACTS

Plaintiff's claims allegedly arose during the course of his efforts to obtain treatment from jail medical staff for "severe pain from a sinus infection" that was "draining to [his] bad teeth." (Dkt. # 6, Pl.'s Am. Compl. 3.) Plaintiff indicates that when he was checked by a doctor, there was concern that Plaintiff's "blood sugar levels were in the 3-4 hundreds." (*Id.*) Plaintiff asserts that after being refused ibuprofen, he told the doctor "when I'm in such pain I can't take my metformin[2] as I will through [sic] it up and anyway they had not filled my refill for three weeks." (*Id.*)

Plaintiff contends that after finally receiving his prescription refill k.o.p. [keep on person], it was taken back later the same day by a nurse who said that P.A. Glenn set up single doses three times a day. (*Id.*) Plaintiff further contends that after the nurse brought him the wrong medications three different times, he refused to take them unless "they give me my meds k.o.p.," after which they quit bringing them altogether. (*Id.*) Plaintiff indicates that when he subsequently kited for ibuprofen or sinutab, he was first moved to Mary West (medical unit) where they had a highly contagious medical disease, and then eventually moved to Mary East (seg. unit behind glass). (*Id.*)

*//*

---

[2]Metformin is an anti-diabetic medication that acts by increasing the sensitivity of liver, muscle, fat, and other tissues to the uptake and effects of insulin. (Decl. of Glenn Lirman, Dkt. # 21 at 2-3.)

REPORT AND RECOMMENDATION
Page - 2

Plaintiff claims that on the day he was moved to Mary East, he was taken to the clinic where he saw P.A. Glenn, who allegedly threatened to take his commissary away, and said that "he would take away my food and put me in seg unit." (*Id.*) Plaintiff also alleges that P.A. Glenn cut his food by putting him on a diabetic tray. (*Id.*) Plaintiff contends that when he quit eating, he was put on regular food but moved to closed custody, although he never got a writeup for fighting or causing trouble. (*Id.* at 3-4.) Plaintiff states, "I am in constant pain to which [sic] they do not address; yet they tell me that I must submit to medications for Type Two Diabetes or things will get worse." (*Id.* at 4.) Plaintiff also claims that he has problems with his left shoulder, lower back, and neck from prior accidents, and he contends that being in bed 21 hours a day is causing him more pain than just his tooth pain. (*Id.*)

Defendants indicate that inmates who have diabetes are offered regular blood glucose checks and anti-diabetic medications. (Dkt. # 20 at 2.) Defendants further indicate that inmates who have diabetes are housed in the Medical Unit when it is necessary to closely monitor their blood sugar levels. (*Id.*) Defendants contend that on May 24, 2005, the day of the health screening, Plaintiff was identified for blood glucose checks and placed in the Medical Unit. (Dkt. # 20 at 2.) Defendants state that a ninety-day supply of three anti-diabetic medications that act to lower blood glucose levels – pioglitazone, glipizide, and metformin – were prescribed for Plaintiff on the "keep on person" protocol. (*Id.* at 3.) Defendants also state that Petitioner refused the medication, and on May 26, 2005, the medications were changed to the "single dose" protocol. (*Id.*)

Defendants contend that after Plaintiff refused the "single-dose" offers of anti-diabetic medications and stated he wanted only metformin, he was seen by Advanced Registered Nurse Practitioner Glenn Lirman ("Lirman"). (*Id.*) Defendants' summary judgment motion describes the course of treatment that Lirman provided Plaintiff during the period between May 31, 2005,

REPORT AND RECOMMENDATION
Page - 3

and March 15, 2006. (*Id.* at 3-4.) Defendants claim that Lirman was not involved in any classification, security level, or location decisions related to Plaintiff other than authorizations on four particular dates related to placement in and release from the Medical Unit. (*Id.* at 5.) They also contend that Lirman did not participate in any infraction reports prepared by Department of Adult and Juvenile Detention officers. (*Id.*) As support for the summary judgment motion, Defendants have filed Lirman's declaration with attached exhibits that include medical treatment records, a medical grievance, and a medical kite. (Dkt. # 21.)

## III. DISCUSSION

Defendants seek summary judgment and dismissal of Plaintiff's section 1983 action on grounds that: (a) Plaintiff cannot establish facts that raise a question of triable fact regarding defendant Lirman's liability under § 1983, and (b) Plaintiff has not presented any question of fact regarding defendant Holtgeert's liability under § 1983. (Dkt. # 20 at 8, 9.)

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Genuine disputes are those for which the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Material facts are those which might affect the outcome of the suit under the governing law. *Id.* The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. *See id.* at 257. The court is required to draw all reasonable inferences in favor of the non-moving party. *Hernandez v. Spacelabs Med., Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).

In response to a summary judgment motion, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleadings." Fed. R. Civ. P. 56(e). The

REPORT AND RECOMMENDATION
Page - 4

1  nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Id.*
2  The mere existence of a scintilla of evidence in support of the nonmoving party's position is not
3  sufficient. *Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).

4  A.   CLAIMS AGAINST DEFENDANT LIRMAN

5   1.   <u>Medical Care</u>

6  Plaintiff generally alleges that medical care he received from Lirman violated his Eighth
7  Amendment rights against cruel and unusual punishment. (Dkt. # 6 at 4.) To state a section
8  1983 claim for violation of a prisoner's eighth amendment rights due to inadequate medical care,
9  the prisoner must allege facts evidencing a deliberate indifference to his serious medical needs.
10 *Estelle v. Gamble*, 429 U.S. 97, 105-06, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Toussaint v.*
11 *McCarthy*, 801 F.2d 1080, 1111 (9th Cir. 1986), *cert. denied*, 481 U.S. 1069 (1987). "Such
12 indifference may be manifested in two ways. It may appear when prison officials deny, delay or
13 intentionally interfere with medical treatment, or it may be shown by the way in which physicians
14 provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988) (citing
15 *Estelle*, 429 U.S. at 104-05). The alleged indifference of the prison officials must rise to the
16 level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105. Differences in
17 judgment between an inmate and prison medical personnel regarding appropriate medical
18 diagnosis or treatment are not enough to state a deliberate indifference claim. *Franklin v.*
19 *Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

20 In this case, Plaintiff claims that his Eighth Amendment rights were violated when
21 Lirman: (1) made verbal threats and physical sanctions against him for refusing to take diabetes
22 medications, while refusing him ibuprofen for pain; (2) carried through with threats by putting
23 him in the segregation unit in medical; and (3) cut his food by putting him on a diabetic tray.
24 (*See* Dkt. # 6 at 5; Dkt. # 23 at 2). Plaintiff specifically contends that Lirman "threatened to take

REPORT AND RECOMMENDATION
Page - 5

my commissary away [and] when I told him that I didn't receive any, he said he would take away my food and put me in seg. unit house." (Dkt. # 6 at 3.) In his response to the summary judgment motion, Plaintiff also argues that he was forced to take medication. (Dkt. # 28 at 2.) Defendants argue that Lirman did not act with "deliberate indifference." The undersigned agrees with Defendants.

Careful review of the record shows that Lirman had Plaintiff transferred to the Medical Unit on two occasions. On July 6, 2005, having first acknowledged medical progress notes from the preceding day showing that Plaintiff had refused his last eight doses of metformin, Lirman noted that Plaintiff needed blood glucose checks to determine stability, and he indicated that Plaintiff would be transferred to the Medical Unit. (Dkt. # 21 at 21, Ex. F.)[3]  Again, on March 10, 2006, after noting that Plaintiff's blood glucose numbers were high, Lirman authorized Plaintiff's transfer to the Medical Unit and ordered blood glucose checks twice a day. (*Id.* at 36, Ex. M.)  Additionally, Lirman acknowledges that when he saw Plaintiff on March 14, 2006, he told Plaintiff that he would consider holding his commissary to help control his blood glucose; however, he did not implement the hold on commissary. (*Id.* at 6; *see also* Ex. O.)

The record contains no evidence showing that Lirman was the medical provider who put Plaintiff on a diabetic diet. Rather, the record shows that after Plaintiff submitted a medical kite on March 6, 2006, requesting that the diabetic tray be stopped and he be returned to a normal tray, Lirman approved the request on March 17, 2006. (*Id.* at 44, Ex. P.) The record is replete with notations reflecting Plaintiff's refusal of certain anti-diabetic medications (*Id.* at 12, 14, 16, 18, 21), and with notations that Lirman discontinued particular medications on several occasions

---

[3]Lirman also noted the need for a signed refusal from Plaintiff, then medications would be discontinued. (Dkt. # 21 at 21, Ex. F.) Lirman authorized Plaintiff's release from the Medical Unit to the general population on July 11, 2005. (*Id.* at 25, Ex. H).

REPORT AND RECOMMENDATION
Page - 6

based on Plaintiff's refusals (*Id.* at 14, 19, 23, 34.)  Additionally, when Plaintiff appealed a medical grievance on March 15, 2006, claiming that he was being forced to take medications he did not want, the medical supervisor issued a response the next day indicating that Plaintiff could refuse any medications as long as he was aware of the results of his refusal. (*Id.* at 40, Ex. N.)

These facts reflect that Lirman took the challenged actions as a means of monitoring and managing Plaintiff's Type 2 diabetes, which is indisputably a serious medical condition. Lirman clearly authorized Plaintiff's two transfers to the Medical Unit in order to monitor his blood glucose levels. While it is unclear from the record that Lirman was the medical provider who put Plaintiff on the diabetic diet, the administering of an appropriate diet to a diabetic prisoner is a matter of medical judgment. Furthermore, the evidence shows that Lirman readily authorized Plaintiff's return to the normal food tray after Plaintiff submitted a written request to discontinue the diabetic tray. Plaintiff has neither pointed to evidence in the record demonstrating that Lirman forced him to take medication nor has he shown and "unnecessary and wanton infliction of pain" to the extent that he was forced to take anti-diabetic medications. Moreover, to the extent that Lirman threatened to withhold Plaintiff's commissary, he neither implemented the threat nor could he have done so because Plaintiff admits that he was not receiving any commissary at the time. (Dkt. # 6 at 3.)

In this case, Plaintiff has neither alleged that he was denied medical treatment for his diabetes; nor has he alleged that there were serious delays in his treatment. Moreover, there is no indication that Plaintiff suffered any harm from the medical care Lirman provided. Instead, it appears that there was simply a difference in judgment between Plaintiff and Lirman on whether such treatment was needed to monitor and manage Plaintiff's diabetes, which is not enough to state a deliberate indifference claim. *See Franklin*, 662 F.2d at 1344.

Plaintiff's only allegation that medical treatment was denied or delayed medical is his

REPORT AND RECOMMENDATION
Page - 7

claim that Lirman refused him ibuprofen for pain. However, there is no evidence in the record showing that Plaintiff ever asked Lirman to prescribe ibuprofen for his pain or that Lirman refused such a request. Rather, a review of the record shows that Plaintiff was seen by Lirman regarding "D.M." [Diabetes Mellitus] and left shoulder pain on June 22, 2005. (Dkt. # 21 at 19, Ex. E.) In a medical progress note, Lirman assessed Plaintiff's shoulder pain as a "likely rotator cuff tear," and he ordered an x-ray of the left shoulder and prescribed naproxen.[4] *Id.* In setting out the subjective data regarding Plaintiff's shoulder pain, Lirman noted that Plaintiff "[s]tates Motrin[5] ineffective." (*Id.* at 18.) Moreover, in a progress note from the previous day, a different medical provider noted that Plaintiff was "refusing k.o.p. bottles of *ibuprofen*, glipizide, and pioglitazone." *Id.* (emphasis added). This evidence demonstrates that Lirman neither ignored Plaintiff's shoulder pain nor denied or delayed treatment for this medical condition. Thus, although Plaintiff may have preferred ibuprofen rather than the pain medication that Lirman prescribed, Plaintiff has failed to present evidence showing that Lirman was deliberately indifferent to his shoulder pain.

In light of the above, Plaintiff has failed to raise genuine issues of material fact from which a jury could conclude that defendant Lirman has liability under § 1983 for violation of Plaintiff's eighth amendment rights. Therefore, the undersigned recommends that Defendants' summary judgment motion be granted on this claim.

2. Transfer to Closed Custody

Plaintiff appears to allege that defendant Lirman put him in the segregation unit in medical for refusing to take medications, and that he was subsequently moved to closed custody,

---

[4]Naproxen is a nonsteriodal anti-inflammatory drug used for the treatment of mild to moderate pain. *Physicians' Desk Reference*. 61st ed. Montvale, NJ: Thomson PDR; 2007:2761.

[5]Motrin is a brand name version of ibuprofen, a non-steroidal anti-inflammatory drug.

REPORT AND RECOMMENDATION
Page - 8

1 although he never got a write-up for fighting or causing trouble. (Dkt. # 6 at 3-4.) Plaintiff
2 further asserts a right to a hearing for infractions that jeopardize custody levels. Defendants
3 acknowledge that Lirman authorized Plaintiff's placement in and release from the medical units
4 on June 3, 2005, July 6, 2005, July 11, 2005, and March 10, 2005. (Dkt. # 20 at 5). However,
5 Defendants contend that Lirman was not involved in any other classification, security level, or
6 location decisions related to Plaintiff and did not participate in any infraction reports prepared by
7 Department of Adult and Juvenile Detention Officers. (*Id.*)

8       To establish liability under § 1983, Plaintiff must show how individually named
9 defendants caused or personally participated in causing the harm alleged in the complaint. *See*
10 *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). As discussed in subsection 1, *supra.*,
11 Plaintiff has failed to demonstrate a constitutional violation based on Lirman's authorization of
12 his transfer to the medical unit for monitoring of his blood glucose levels. Moreover, other than
13 his unsupported allegations, Plaintiff has not provided any evidence showing that Lirman
14 personally participated in or caused him to be moved to a closed custody classification.
15 Accordingly, the undersigned concludes that Defendants are entitled to summary judgment on
16 this claim.

17 B.    <u>CLAIMS AGAINST DEFENDANT HOLTGEERTS</u>

18       In his amended complaint, Plaintiff claims that Commander Holtgeerts refused to address
19 these issues and has allowed classification to change his status without just cause. (Dkt. # 6 at
20 5.) However, in response to Defendants' summary judgment motion, Plaintiff contends that
21 defendant Holtgeerts was never brought into this matter. (Dkt. # 23 at 2.)

22       A defendant cannot be held liable under § 1983 solely on the basis of supervisory
23 responsibility or respondeat superior. *See Monell v. New York City Dept. Of Social Services*,
24 436 U.S. 658, 691 (1978). A supervisor is only liable for the constitutional violations of his

25
26 REPORT AND RECOMMENDATION
Page - 9

subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted); *see also Ortez v. Washington County*, 88 F.3d 804, 809 (9th Cir. 1996) (concluding proper to dismiss where no allegations of knowledge of or participation in alleged violated).

Given that Plaintiff now waivers on whether he intended to pursue this section 1983 action against defendant Holtgeerts and, more importantly, because Plaintiff fails to present any facts showing that defendant Holtgeerts participated in, directed, or was aware of the alleged violations and failed to act to prevent them, this Court concludes that summary judgment dismissing this claim is warranted.

## IV.  CONCLUSION

For the foregoing reasons, this Court recommends that Defendants' motion for summary judgment be granted, and this action be dismissed with prejudice. A proposed order accompanies this Report and Recommendation.

DATED this 21st day of March, 2007.

*/s/ M. J. Benton*
MONICA J. BENTON
United States Magistrate Judge

REPORT AND RECOMMENDATION
Page - 10